# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

RICK ALLEN WOODRUFF
VICKIE ANNETTE WOODRUFF

      Debtors

Case No. 10-35932

Q. WARREN CERVINI
and ROSALIND CERVINI

      Plaintiffs

v.

RICK ALLEN WOODRUFF
and VICKIE ANNETTE WOODRUFF

      Defendants

Adv. Proc. No. 11-3067

## M E M O R A N D U M

**APPEARANCES**:    MENEFEE & BROWN, LLP
        Mark E. Brown, Esq.
        9724 Kingston Pike
        Suite 206
        Knoxville, Tennessee 37922
        Attorneys for Plaintiffs

        JOHN H. FOWLER, ESQ.
        112 Bruce Street
        Sevierville, Tennessee 37862
        Attorney for Defendants

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint of the Plaintiffs Q. Warren Cervini and Rosalind Cervini for Monetary Judgment, Rescission of Contract, and to Object to the Dischargeability of a Certain Debt (Complaint) filed by the Plaintiffs on March 14, 2011, asking the court to enter a judgment rescinding a contract for sale of real property between the parties, awarding the Plaintiffs damages in the amount of $163,000.00, loss of rental income, and pre-judgment interest, and making the determination that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2) (2006).

At the conclusion of the trial held on February 17, 2012, the court reserved judgment until March 8, 2012, intending to issue a bench opinion on that date. Instead, the court has chosen to issue this Memorandum. The record consists of thirty-one exhibits entered into evidence and the testimony of seven witnesses, George Aubuchon, Aaron Allen, David Galaska, both Plaintiffs, and both Defendants. The parties have expressly consented to the entry of final orders and judgments by the bankruptcy judge with regard to all issues be they core in nature under 28 U.S.C. § 157(b) (2006), or non-core but related to the Debtors' bankruptcy case under 28 U.S.C. § 157(c) (2006).[1]

# I

After consultation with a local real estate agent regarding the purchase of rental property in the Knoxville area, the Plaintiffs, in October 2007, executed a Purchase and Sale Agreement,

---

[1] Pursuant to the Pre-Trial Order entered on June 1, 2011, the parties agreed that "[t]o the extent that the Court is called upon to decide any non-core related matters, the parties consent to entry of a final order by the United States Bankruptcy Court." Prior to the commencement of the trial on February 17, 2012, both the Plaintiffs and Defendants, through their respective attorneys, stated on the record that they expressly agreed to the entry of final orders and judgments by the bankruptcy judge with regard to all core and non-core but related matters.

offering to purchase from the Defendants for $145,000.00 a four-plex located at 3626 McDonald Drive, Knoxville, Tennessee, with the following description "per MLS #573462":

> Excellent Income Producing Property 2 duplexes both KCDC Approved.[2] Unit 1 has 5Br / 2Bath with 1500 Sq. Ft. + 1 BR / 1Bath 800 Sq. Ft. This unit has been fully remodeled in 2006 including electric, plumbing, windows, kitchens, flooring, hvac, and baths. Also has handicap access. Unit 2 has 2 BR / 1 Bath 950 Sq. Ft. + 1 Br. / 1 Bath with 950 Sq. Ft. Both units are rented. Unit 2 is fully rented to long term tenants. Nice Rural area. Close to Holston Hills and on City Bus Route. Square footage taken from tax records."

TRIAL EX. 1; TRIAL EX. 5. As reflected in the Purchase and Sale Agreement, the home protection warranties were waived, prorated rents and security deposits were to be conveyed at closing, copies of all leases were to be provided within 24 hours of contract acceptance, and, within 24 hours, the pre-approval letter was to be provided to the Plaintiffs. TRIAL EX. 1 at ¶¶ 14, 18-19. The parties, after exchanging counter-offers through their respective real estate agents, finally agreed to a purchase price of $163,000.00 as evidenced by the counter-offer signed by the Plaintiffs on November 10, 2007, which more specifically designated the property address as 3624 and 3626 McDonald Drive, Knoxville, Tennessee.[3] TRIAL EX. 8; TRIAL EX. 9.

The Plaintiffs purchased the McDonald Drive Property from the Defendants on December 7, 2007. TRIAL EX. 7. At the Plaintiffs' request, Safeguard Home Inspection, LLC conducted a home inspection on November 20, 2007, and the Plaintiffs provided the Defendants with a list of repairs to be made prior to closing, although not all of the repairs were, in fact, completed. TRIAL EX. 20; TRIAL EX. 21. Throughout the sale negotiations and at the time of purchase, all four units – 3624A

---

[2] Knoxville's Community Development Corporation (KCDC) assists lower-income families through rent subsidies.

[3] The court will refer to both properties collectively as the "McDonald Drive Property," and individually by the respective street number for each.

3

and B and 3626A and B – were rented, *see* TRIAL EX. 26, and the leases were assigned to the Plaintiffs at the December 7, 2007 closing. TRIAL EX. 13; TRIAL EX. 14; TRIAL EX. 15.

In July 2008, in response to the lodging of a complaint by the tenant occupying 3626B McDonald Drive, George Aubuchon, a Codes Enforcement Officer for the City of Knoxville, conducted an inspection of the basement apartment following which he notified the Plaintiffs in a letter dated July 30, 2008, that, *inter alia*, "the structure was found to be in violation of the Standard Housing Code" and "Unfit for Human Habitation." COLL. TRIAL EX. 36; *see also* TRIAL EX. 35. A page entitled "Code Section(s) and Violation(s)" was attached to the letter, setting forth the following:

> UNFIT FOR HUMAN HABITATION
>
> 1: 302.9 Smoke Detector Systems - Every dwelling unit shall be provided with an approved listed smoke detector, installed in accordance with the manufacturer's recommendations and listing. When activated, the detector shall provide an audible alarm. The detector shall be tested in accordance with and meet the requirements of UL 217, Single and Multiple Station Smoke Detectors.
>
> 2: Install ground fault circuit interrupter for outlets as/where needed.
>
> 3: Wiring needs major maintenance and upgrades where needed. Numerous splices, open junctions, and excessive use of zip cord wiring.cover exposed wires.
>
> 4: 305.1 Foundation - The building foundation system shall be maintained in a safe manner and capable of supporting the load which normal use may cause to be placed thereon.water leaking in to unit fix problem.
>
> 5: 309.1 Dangerous Structures
>
> Any dwelling or dwelling unit which shall be found to have any of the following defects shall be condemned as unfit for human habitation and declared to be a nuisance and shall be so designated and placarded by the Housing Official.

> 1. One which is so damaged, decayed, dilapidated, unsanitary, unsafe, or vermin-infested that it creates a serious hazard to the health or safety of the occupants or the public.
>
> 2. One which lacks illumination, ventilation, or sanitation facilities adequate to protect the health or safety of the occupants or the public.no permit to convert to duplex.

COLL. TRIAL EX. 36. As the responsible owners, the Plaintiffs were instructed that the occupant of the apartment was required to vacate the premises within thirty days and would not be allowed to live in the structure "until the violations have been corrected and inspected by an official of the Codes Enforcement department," and the Plaintiffs were given 120 days to bring the structure into full compliance. COLL. TRIAL EX. 36. A second letter was sent to "Current Occupant" of 3626 McDonald Drive, asking that the premises be vacated within thirty days. TRIAL EX. 37. Since August 2008, the Plaintiffs have not rented 3626B McDonald Drive, which cannot be rented as a separate apartment due to its inability to meet the Codes standards.

The Defendants filed the Voluntary Petition commencing their bankruptcy case under Chapter 7 on December 14, 2010. The Plaintiffs filed the Complaint initiating this adversary proceeding on March 14, 2011, averring that the Defendants knowingly and intentionally misrepresented that the McDonald Drive Property contained four rental units when it only contained three, that the Plaintiffs relied on the Defendants' false representations, and that they suffered damages as a result. Based upon these allegations, the Plaintiffs seek rescission of the November 10, 2007 sales contract, a judgment in the amount of $163,000.00 representing the purchase price paid at closing, pre-judgment interest from the date of closing, rental income not realized, and a

determination that the judgment is nondischargeable. Pursuant to the Pre-Trial Order entered on June 1, 2011, the issues to be decided are as follows:

> a. Did the Defendants intentionally and knowingly misrepresent the nature of the real property at 3624 and 3626 McDonald Drive as containing four (4) rental units when in fact it contained only three (3) rental units; that such representations were made with knowledge of their falsity or reckless disregard of their truth; that the Plaintiffs relied on those representations to their detriment and suffered damages as a result?
>
> b. As a result of the Defendant's misrepresentations are the Plaintiffs entitled to rescission of the Purchase and Sale Agreement entered into with the Defendants for the purchase of real property at 3624 & 3626 McDonald Drive, Knoxville, Tennessee?
>
> c. Are the Plaintiffs entitled to recover damages in the amount of One Hundred Sixty Three Thousand Dollars ($163,000.00) representing the purchase price of the real property, plus pre-judgment interest at the rate of ten-percent (10%) per annum from the date of closing until the date of judgment?
>
> d. Are the Plaintiffs entitled to recover a loss of rental income based on the Defendants' material misrepresentations?
>
> e. Are the Plaintiffs entitled to have the debt owed to them by the Defendants declared non-dischargeable under 11 U.S.C. §523(a)(2)(A) based on the allegation that the Defendants obtained money, property, services, or an extension, renewal or financing of credit by false pretenses, false representations or actual fraud?

PRETRIAL ORDER at ¶ 4.

## II

As the basis for seeking rescission, the Plaintiffs argue that the Defendants misrepresented the nature of the McDonald Drive Property as containing four rental units when, in fact, there were only three rental units on the property. "It is well established [under Tennessee law] that a contract can be express, implied, written, or oral, 'but an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from

6

fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003) (quoting *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)). Moreover, contracts are to be construed as of the date they are made and cannot be based upon events occurring subsequent to execution. *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 364 (Tenn. 1966).

"Rescission is an equitable remedy designed to restore the parties to the positions they would have occupied had the transaction not occurred." *Goodale v. Langenberg*, 243 S.W.3d 575, 591 (Tenn. Ct. App. 2007). Parties may seek rescission of a contract for the sale of real property procured through fraud and/or misrepresentation; however, the decision to rescind is discretionary, and courts "should exercise this discretion very sparingly and only award it 'in cases where some such element as actual fraud, accident, mistake or insolvency . . . appear to justify it.'" *Owen v. Summers*, 97 S.W.3d 114, 125 (Tenn. Ct. App. 2001) (citations omitted).

> In order to prove a claim based on fraudulent or intentional misrepresentation, a plaintiff must show that:
>
> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (citations omitted); *see also Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. June 30, 2000) (setting forth similar requirements to the above as the elements necessary to sustain an action for fraud in the inducement of a contract).

7

> Similarly, misrepresentation by concealment requires a plaintiff to prove the following elements: (1) the defendant concealed or misrepresented a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to deceive the plaintiff; (4) the plaintiff was not aware of the fact and would have acted differently if the plaintiff knew of the concealed or suppressed fact; and, (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage.

*Body Invest, LLC v. Cone Solvents, Inc.*, 2007 WL 2198230, at *6 (Tenn. Ct. App. July 26, 2007) (citing T.P.I. 3-CIVIL 8:38; *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (1986)). As defined by Tennessee law,

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. . . . . A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (citations omitted).

The court examines these same factors with respect to a determination that a judgment is nondischargeable under 11 U.S.C. § 523, which, as is relevant to this adversary proceeding, provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). Section 523(a) is construed liberally in favor of debtors and strictly against the party seeking a determination of nondischargeability, who also bears the burden of proving the necessary elements by a

8

preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

In order to satisfy the requirements of § 523(a)(2)(A), the Plaintiffs must prove that the Defendants, with an intent to deceive, obtained money, property, or services through material misrepresentations they knew were false or were made with gross recklessness, that the Plaintiffs justifiably relied on the Defendants' false representations, and their reliance was the proximate cause of their losses. *McDonald v. Morgan (In re Morgan)*, 415 B.R. 644, 649 (Bankr. E.D. Tenn. 2009).

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another - something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (citations omitted). "[F]alse representations and pretenses encompass statements that falsely purport to depict current or past facts," and fraudulent intent may be "inferred as a matter of fact" based on the totality of the circumstances when a defendant has engaged in "somewhat blameworthy" conduct. *Morgan*, 415 B.R. at 649 (citations omitted). Nevertheless, mere negligence or evidence of "[a] dumb but honest debtor does not satisfy the test." *Copeland*, 291 B.R. at 765-66 (citations, brackets, and quotation marks omitted).

In the Sixth Circuit, courts employ a subjective standard to determine intent. *Rembert*, 141 F.3d at 281.

> A subjective approach, of course, requires that the trier-of-fact focus solely on the individual characteristics of the debtor. Yet, like an objective approach, a subjective approach still entails the utilization of circumstantial evidence given that a debtor will rarely, if ever, admit to acting in a fraudulent manner; helpful in this regard are many of the traditional indicia of fraud – e.g., a suspicious timing of events, insolvency, transfers to family members or other insiders. In utilizing such indicia, however, the Sixth Circuit cautioned against "factor-counting," instead holding, "[w]hat courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent."

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (quoting *Rembert*, 141 F.3d at 282; other citations omitted). The court must also find justifiable reliance; i.e., the party seeking a determination of nondischargeability actually relied on the representations and, based upon the facts and circumstances known at the time, their reliance was justifiable. *Morgan*, 415 B.R. at 649. In short, a determination of nondischargeability under § 523(a)(2)(A) requires a plaintiff to prove fraud in the inducement and often comes down to the defendant's conduct prior to, at the time of, and subsequent to the representations at issue and which witnesses are the most credible. *Copeland*, 291 B.R. at 766; *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001).

Based upon the evidence presented, the court finds that the Plaintiffs have not proved that the Defendants knowingly or fraudulently misrepresented the nature of the McDonald Drive Property and, accordingly, they are not entitled to rescission of the Purchase and Sale Agreement, any damages, or a determination of nondischargeability.

In support of their request for rescission, the Plaintiffs contend that the Defendants knowingly mis-marketed the McDonald Drive Property, advertising in the MLS listing that it included two

10

duplexes when, in fact, the Defendants had not obtained a permit to convert 3626 McDonald Drive into a duplex, resulting in the Plaintiffs' purchase of one duplex and a single family unit rather than two duplexes. First, it is undisputed that the Plaintiffs and Defendants had no direct communication with each other during the course of the negotiations leading to the closing of the sale of the McDonald Drive Property on December 7, 2007. All negotiations were handled through the parties' real estate agents. Secondly, as proof of the Defendants' knowledge that 3626 McDonald Drive was not legally converted into a duplex, the Plaintiffs rely on two documents: (1) a building permit issued by the City of Knoxville, Department of Operations, Plans Review & Inspections Division on September 27, 2004, more than three years prior to the sale of the McDonald Drive Property to the Plaintiffs, to "Homeowner Residential" for $1,000.00 work to be performed for "general repairs to single family residence due to √" and (2) an electrical permit issued by the City of Knoxville, Department of Operations, Plans Review & Inspections Division on June 13, 2005, to Allen Electric Company for "general repairs to single family residence due to fire." TRIAL EX. 44; TRIAL EX. 27.

When questioned at trial about the building permit, Mr. Woodruff testified that he does not recall pulling the permit, and he was unaware that it references repairs being made to a single family residence. He also testified that he made substantial cosmetic improvements to the McDonald Drive Property such as cleaning out the paneling and carpeting and installing a french drain but that he was not present for any of the inspections conducted by the City of Knoxville, KCDC, or otherwise. With respect to the electrical permit, Mr. Allen, owner of Allen Electric Company, testified that he obtained the permit in question, upgrading the meter and performing electrical work on 3626 McDonald Drive after it was damaged in a fire to bring it up to Code, and that he did not give

11

a copy of the permit to the Defendants. Additionally, Mr. Allen testified that 3626 McDonald Drive had two separate electrical units on the property, one for each apartment, and that in his own experience and knowledge of zoning laws for both the City of Knoxville and Knox County, a permit was not, in the past, required to convert a single family residence into a duplex.

After reviewing these two permits in conjunction with the testimony at trial, the court finds that there is no support for the Plaintiffs' allegations that the Defendants knowingly and fraudulently misrepresented the nature and status of the structure at 3626 McDonald Drive. Instead, the proof establishes that when the Defendants purchased the McDonald Drive Property in 2004, they purchased it with the understanding that they were acquiring two duplexes, and they subsequently sold it to the Plaintiffs with that same understanding. At trial, Mrs. Woodruff testified that although the McDonald Drive Property was titled in her name, she had very little to do with the rental properties, and she knew nothing about a permit being required for a duplex or that 3626 McDonald Drive had not been legally converted into a duplex. Likewise, Mr. Woodruff testified that no one ever advised him that 3626 McDonald Drive could not be subdivided into a duplex. He testified that he had always rented out four separate apartments, each of which has its own address and mailbox, its own designated entrance, and its own kitchen, bedrooms, and bathrooms. Mr. Woodruff also testified that he did not create the MLS listing used when the Defendants were selling the McDonald Drive Property, which was done instead by his real estate agent, and that MLS listings for the property by a prior owner also listed it as consisting of two duplexes. TRIAL EX. 22; TRIAL EX. 23; TRIAL EX. 24.

The Defendants' testimony as to the prior use of the property was substantiated by David Galaska, from whom the Defendants purchased the McDonald Drive Property in 2004. Mr. Galaska testified that he owned the property for just over a year, having purchased it from Norman Kurtz as a four-plex, that he rented all four units as such, that the apartments were eligible for rent subsidies through KCDC, which would have required inspection and approval by KCDC, and that he never knew a permit was required to convert the property into a duplex. Mr. Woodruff's testimony is further substantiated by the fact that each of the apartments was, at the time of closing with the Plaintiffs, rented, and the Plaintiffs were not only provided with copies of past leases and utility information prior to closing, but the leases in effect at the time of closing were assigned to the Plaintiffs. TRIAL EX. 13; TRIAL EX. 14; TRIAL EX. 15; TRIAL EX. 16; TRIAL EX. 17; TRIAL EX. 18; TRIAL EX. 19.

In addition to the testimony from the Defendants and Mr. Galaska, the record also reflects that the Plaintiffs had a home inspection and appraisal performed prior to the December 7, 2007 closing and that, although the dates are not known, at some point, inspections were conducted by KCDC, and yet, there is no mention in any documentation arising from these inspections that 3626 McDonald Drive was not, in fact, legally a duplex or that a permit was required – but had not been obtained – for 3626 McDonald Drive to be utilized as a duplex. There is simply no evidence that the Defendants acted fraudulently with respect to the sale of the McDonald Drive Property to the Plaintiffs or that they knowingly, intentionally, or with reckless disregard misrepresented that the McDonald Drive Property was a four-plex when it legally consists of one duplex and a single family residence. Accordingly, there is no basis for rescission of the Purchase and Sale Agreement between

the parties, and there is, therefore, no basis for awarding a judgment to the Plaintiffs.  The Complaint filed by the Plaintiffs on March 14, 2011, will be dismissed.

A Judgment consistent with this memorandum will be entered.

FILED:  February 28, 2012

> BY THE COURT
>
> */s/  RICHARD STAIR, JR.*
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE